UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| de'CARLOS FREEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:14 CV 1989 |
| | ) |
| INDIANA DEPARTMENT OF | ) |
| CORRECTIONS COMMISSIONER, | ) |
| et al. | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

de'Carlos Freeman, a *pro se* prisoner, filed a complaint under 42 U.S.C. § 1983. (DE # 3.) Pursuant to 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. The court applies the same standard as when deciding a motion to dismiss under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 603. The court must bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation

marks and citations omitted).

Freeman is currently confined at Westville Correctional Facility ("Westville"). He alleges that at Westville on October 7, 2013, a group of white supremacy prisoners got into a fight with a group of black prisoners at lunch time in the chow hall. After this incident, the fighting continued in the dorms and the inmates were separated. Since the white supremacists were outnumbered and getting beaten up, they were taken to the gym to stay for the night.

The next day, Freeman and other inmates were taken to the west wing. Those white supremacists that were taken to the gym the day before were present in the west wing when Freeman arrived. They rushed toward Freeman and other inmates. While some inmates engaged in fighting, Freeman fled with others. While fleeing, Freeman was pushed into a pillar and broke his hand. Based on these events, Freeman has brought suit against ten prison officials. However, only three of them - Commissioner Bruce Lemmon, Superintendent Mark Levenhagen and Major George Payne- are named in the body of the complaint.

First, Freeman claims that Commissioner Lemmon, Superintendent Levenhagen, and Major Payne are responsible for failing to protect him from the physical harm he suffered in the west wing. Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations and internal punctuation omitted). However, "[p]risons are dangerous places. Housing the most aggressive among us, they place violent people in

close quarters." *McGill v. Duckworth*, 944 F.2d 344, 345 (7th Cir. 1991).

> Some level of brutality and sexual aggression among [prisoners] is inevitable no matter what the guards do. Worse: because violence is inevitable unless all prisoners are locked in their cells 24 hours a day and sedated (a "solution" posing constitutional problems of its own) it will always be possible to say that the guards "should have known" of the risk. Indeed they should, and do. Applied to a prison, the objective "should have known" formula of tort law approaches absolute liability, rather a long distance from the Supreme Court's standards in *Estelle* and its offspring.

*McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991).

Therefore, when an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen . . . ." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendants "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer*, 511 U.S. at 837. Merely expressing a generalized fear of future harm based on past attacks is not sufficient to establish liability. *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008). Negligence does not satisfy the "deliberate indifference" standard, *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994), and it is not enough to show that a prison guard merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995).

Here, taking Freeman's allegations as true, Major Payne at the direction of Commissioner Lemmon and Superintendent Levenhagen, took Freeman to the west wing - an area populated with white supremacist prisoners - which ultimately resulted in him being injured. This alone does not plausibly state a claim for failure to protect. *Klebanowski*,

3

540 F.3d at 639-40. To start, the Supreme Court has warned that prisons should not racially segregate prisoners. *Johnson v. California*, 543 U.S. 499 (2005). Thus, it is expected that prison officials will take black inmates into areas frequented by white inmates and vice versa. Although there had been some recent race related altercations in the prison, the white supremacists in the west wing were those beaten up the night before and being held there for safety in a form of protective custody. There is no indication that any of these white supremacists were the same ones who started a fight in the lunch room on the prior day. See *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005) (holding that failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility."). Moreover, it is not plausible to infer that the officers took Freeman to the west wing knowing that a substantial risk of harm existed or that they condoned the attack. Freeman does not allege that to be the case. To the contrary, when the fight broke out in the west wing, officers used mace and tear gas to break up the altercation. Because there are no plausible allegations that any of the defendants were deliberately indifferent to Freeman's safety by taking him to the west wing, the failure to protect claim must be dismissed.

Next, Freeman alleges Major Payne employed excessive force by requiring him to lay down in west wing and breathe the mace and tear gas for 2 hours before taking him outside. Freeman alleges he begged to be taken out of the room or to open the windows, but Major Payne refused, knowing Freeman was having a hard time to breathe. The "core requirement" for an excessive force claim is that the defendant "used force not in a

4

good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id*. The use of chemical agents on its own does not violate the Constitution. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). Constitutional liability attaches only when prison officials use chemical agents "for the sole purpose of punishment or the infliction of pain. *Id.*

Here, the complaint can be read to allege that Major Payne required Freeman inhale chemical agents for two hours to maliciously or sadistically cause harm. Giving him the inferences to which he is entitled at this stage, he has alleged enough to proceed further against Major Payne. Further factual development may show Major Payne acted reasonably under the circumstances, but Freeman has alleged enough at this stage.

In addition, Freeman discusses his dissatisfaction with other correctional officers' actions and subsequent medical treatment he was provided. However, this dissatisfaction does not appear to assert additional claims because these events involve persons not named as defendants in this complaint. Thus, they need not be discussed in detail here.

For these reasons, the court:

(1) **GRANTS** de'Carlos Freeman leave to proceed against Major George Payne in his individual capacity for monetary damages for using excessive force on October 8, 2013;

(2) **DISMISSES** all other claims;

(3) **DISMISSES** Bruce Lemmon, Mark Levenhagen, Michael Pence, Mike Scott, Andrew Pazera, Tome Horne, Sharon Hawk, Sandra Sharpe, and Ed Vazquez;

(4) **DIRECTS** the United States Marshals Service to effect service of process on Major George Payne pursuant to 28 U.S.C. § 1915(d); and

(5) **ORDERS** Major George Payne to respond, as provided for in the Federal Rules of Civil Procedure, only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED.**

Date: May 26, 2015

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT